**In re McLAREN'S ESTATE et al.**
**(No. 8401.)**

(Court of Civil Appeals of Texas. Dallas. April 17, 1920.)

**1. Evidence ⬰370(4)—Copies not shown to be true copies of original are inadmissible.**

Even if the original confessions were admissible in evidence in guardianship proceedings, copies thereof not shown to be true copies of the original are inadmissible.

**2. Evidence ⬰318(1) — Confessions charging that petitioner incited commission of crime inadmissible as hearsay.**

Copies of written confessions by petitioner's son and another that they killed petitioner's husband at her instigation are inadmissible, in proceedings for the appointment of petitioner as guardian of the estates of her minor children, to show that she is not qualified to act as guardian, since they are purely hearsay.

**3. Evidence ⬰207(4) — Written confessions inadmissible against others after conviction of authors.**

Written confessions are inadmissible in subsequent proceedings after the conviction for felony of the authors of the confessions, since the conviction rendered the authors incompetent as witnesses.

**4. Evidence ⬰207(1)—Complaint and judgment in preliminary examination inadmissible against petitioner.**

On an application for appointment as guardian of petitioner's minor children, a complaint before a justice of the peace charging petitioner on information and belief of affiant with the murder of her husband and a judgment of the justice binding her over to the district court to answer the charge of murder are inadmissible against the petitioner.

**5. Evidence ⬰220(6)—Failure to deny confession of another charging complicity held not an admission.**

The fact that a person was present in court when a written confession by the defendants on trial was read in which the person was charged with instigating the murder of her husband, and that she did not then deny the charge, cannot be considered as an admission by her of its truth, since she was not then called upon to answer the charge, and to have done so would have interrupted the orderly proceedings of the court.

**6. Guardian and ward ⬰10—Surviving parent entitled to guardianship in absence of competent evidence of disqualification.**

The surviving parent of minor children who was designated by them as their choice as guardian is entitled to letters of guardianship on their estates, unless disqualified by reason of some matter mentioned in Vernon's Sayles' Ann. Civ. St. 1914, art. 4078, although the court may be of the opinion that some other person would fill the position better.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Application by Carrie B. McLaren for letters of guardianship of the estates of Lucy McLaren and another, minor children of applicant. The district court refused the application on appeal from the county court, and the applicant appeals. Reversed and remanded, with directions to appoint applicant as guardian.

H. T. Sims, of Ardmore, Okl., and Snodgrass, Dibrell & Snodgrass, of Coleman, for appellant.

TALBOT, J. This is an appeal from a judgment of the district court of Dallas county denying to appellant, Carrie B. McLaren, letters of guardianship upon the estates of Jesse Calvin McLaren and Lucy McLaren, minor children of appellant. The application for guardianship was heard on an appeal from the county court of Dallas county, in which court the guardianship was likewise denied. The district court heard the case without the intervention of a jury and rendered judgment refusing the appellant's application for the guardianship of said estates on the ground, as shown by the judgment, "that applicant has failed to show herself a fit and proper person for the guardianship of the estate of her two children * * * by legal and competent proof of sufficient probative force to warrant the court in granting such application." There was no contest of the application, and the minors, aged about 19 and 17 years, respectively, each, in writing, requested that the appellant be appointed as guardian of their estates. The daughter, Lucy McLaren, also appeared in person and in open court requesting such appointment.

The evidence showed that the appellant is the surviving parent of the minors named, and that she, as plaintiff in a suit for that purpose, secured a decree of divorce against her husband, R. F. McLaren, the father of said minors, in the district court of Williamson county, Tex., in 1910, in which decree the custody of the daughter, Lucy, was awarded to appellant, and the custody of the son, Jesse, was awarded to his father. Upon the hearing of the appellant's application to be appointed guardian of the estates of her said children in the district court of Dallas county, which occurred in October, 1919, it was shown that she was the mother of said minors and that she was then and for some time prior to the filing of her application and ever since such filing had been a resident of Dallas county, Tex. It was further shown by the testimony of Walter B. Cunningham, assistant secretary, T. H. Lindley, building superintendent and chief engineer, respectively, of the Young Men's Christian Association in the city of Dallas, who had known appellant intimately for about a year or a year and a half, and Mrs. Rebecca Hecker, an old friend and acquaintance, that appellant was a woman of good business ability, frugal and economical in her habits, as well as a woman of good character, who associated with none but the best people. It seems that the trial court was under the impression that the appellant was in some way a party to the murder of her husband, R. F. McLaren, and had been indicted therefor, and, for the laudable purpose of securing testimony to that effect, if it could be done, to be considered in determining whether or not the appellant was a fit and proper person to be appointed guardian of the estates of her minor children, upon his own motion adjourned the hearing of her application to October 20, 1919, stating to the court stenographer, all of which appears from the record, as follows:

"Put it down that the court is going to instruct the district clerk of Dallas county to communicate with the district clerk of Williamson county, requesting him to send a certified copy of the indictment filed against Mrs. Carrie B. McLaren in November or December, 1916, also to send a certified copy of the motion of the district attorney filed in open court stating his reasons for the dismissal of that case, and also the judgment of the court thereon, before I finally settle this case."

The appellant testified, in answer to a question propounded to her by the court, that no indictment had ever been presented against her charging her with any character of offense relating to the death of her husband, and a letter of date October 14, 1919, shown by the statement of facts to have been received from the clerk of the district court of Williamson county, stated that appellant was never indicted by the grand jury of Williamson county for any offense growing out of the death of her husband, R. F. McLaren. However, the court, in the judgment rendered denying appellant's application, made, among others, the following declaration:

"The court is of the opinion from the testimony of applicant in this case and from all the facts and circumstances, and from the manner, conduct, and tone of voice of applicant and her feeling of bitterness as exhibited toward her deceased husband and all who were connected with him or with his estate, that the applicant was either directly or indirectly the instigator of the death of her husband for the purpose of securing the possession and control of the estate, which she says with feeling and bitterness she was defrauded out of by a 'frame-up' between the court, her lawyer, her husband, and his lawyer."

The record discloses that Harry McBride and J. C. McLaren, son of the appellant and her deceased husband, R. F. McLaren, were indicted charged with the murder of R. F. McLaren and that both were subsequently convicted of the charge and sent to the penitentiary, McBride for life, and J. C. McLaren for 30 years. It further appears that the conviction of these men was obtained largely upon their written confession of the commission of the crime, which confessions were by the court caused to be introduced in evidence over the objections of appellant. In these confessions both parties set out in detail what purports to be the circumstances of the death of R. F. McLaren, stating, among other things, that McBride killed the deceased by striking him on the head with a gun barrel, while riding along the public road in an automobile, in pursuance of an agreement between the said McBride and J. C. McLaren. The original instruments setting forth the confessions of Harry McBride and J. C. McLaren were not introduced in evidence on

the trial of this case, but only what purports to be a copy of a copy of their confessions. In J. C. McLaren's confession, as shown by the instrument put in evidence, he said, among other things:

"My mother, Carrie McLaren, asked me and Harry (McBride) to poison my father and tried to get us to do it, and Harry knew of a poison but could not get it. We resolved to work it out the way we did. My mother wanted us to poison my father because he had not provided a home for her and me and my sister. * * * My mother asked me and Harry to poison my father when the carnival was here in town about a week before we agreed to same."

In the purported confession of Harry McBride he stated:

"A day or so after I killed Frank (meaning R. F. McLaren) I went back to sanitarium and saw my aunt (the appellant) and she gave me $1.50 and she told me I had better leave as quickly as I could. I went back to Frank McLaren's home and came back to see my aunt and she gave me check to Calvin McLaren (J. C. McLaren) for $50. It was on First State Bank & Trust Company of Taylor. She said she would give more but didn't want to create suspicion. She told Calvin to cash check and give all to me that he didn't need. Calvin cashed check and gave me $40 of it. * * * Mrs. McLaren, the divorced wife of Frank McLaren, told me she had poisoned him (Frank McLaren) in sweet milk but it didn't seem to have any effect. I intended to leave here today and was arranging to leave when I was arrested."

The appellant objected, as shown by bill of exceptions, to the introduction of the written confessions referred to, and after their introduction moved to exclude them, upon the grounds:

(1) That each constituted "hearsay acts and declarations between third parties in no manner binding upon petitioner; (2) that the party who is supposed to have made the confession is now an incompetent witness to testify if he was in court and would not be permitted to testify if he was in court to any of the facts set out in same, because he is shown to be a felon serving a sentence for a felony in the penitentiary; (3) that there is no sufficient evidence in court to justify the alleged confession against the petitioner in this case; and (4) that said testimony is prejudicial, improper, and incompetent."

The record further discloses that the court caused to be introduced in evidence over the objection of the appellant a certified copy made by the clerk of the district court of Williamson county, Tex., of an affidavit subscribed and sworn to by Louis Lowe before Amos Peters, assistant county attorney of said county, and filed in the justice court of said county on the 4th day of December, 1916, charging that said affiant believed and had good reason to believe that appellant, on or about the 27th day of November, A. D. 1916, did, in said Williamson county and state of Texas, unlawfully with malice aforethought kill and murder Frank McLaren, against the peace and dignity of the state; that appellant objected to the introduction of this affidavit and complaint on the grounds, among others: (1) That the same was not evidence of the truth of the statement contained therein, and (2) said affidavit is hearsay and a statement of the opinion and conclusion of the party making it.

It further appears:

That the court caused to be introduced in evidence a judgment rendered in the justice court of Williamson county, Tex., on the 4th day of December, 1916, in the case of the State of Texas v. Carrie McLaren, declaring as follows:

"The court having fully completed the examination in this cause, it is considered that the proof is evident and sufficient to require the defendant, Carrie McLaren, to answer before the criminal district court of Williamson county, Tex., for the offense of murder, and said offense not being a bailable one, it is ordered by the court that Carrie McLaren, defendant, be committed to the jail of Williamson county, Tex., and there safely kept to answer for said offense before said district court."

That appellant objected to the introduction of said judgment on the grounds: (1) Because the same was no evidence of the truth of the statements contained in it; (2) because said judgment was hearsay; (3) because the purported action of the justice court relates to an individual transaction, when the statute requires the general reputation of the party to be notorious to justify the refusal of the guardianship.

[1-3] The court's action in directing the introduction in evidence of the confessions, affidavit, and judgment mentioned is assigned as error and the assignments should, we think, be sustained. The copies of the written confessions of J. C. McLaren and Harry McBride, if otherwise admissible, were not shown to be true copies of the originals. But they were merely the ex parte statements of the acts and declarations of the said McLaren and McBride, res inter alias when considered with reference to this case, strictly hearsay evidence, and in no way binding upon the appellant. Besides, after they were made McLaren and McBride were both convicted of the crime of murder, and the common-law rule which renders a person who has been convicted of such a crime incompetent as a witness was and is in force in this state. Under this rule it has been held by our courts that the deposition of a witness taken before his conviction of the offense of forgery or murder becomes incompetent for use at a trial after such conviction (Webster v. Mann, 56 Tex. 119, 42 Am. Rep. 688; Berry v. Godwin, 188 S. W. 30; Rogers v. Tompkins, 87

S. W. 379), and we see no good reason why the rule should not apply to the written confessions used in the trial of this case. In 13 Cyc. 994, it is said:

"As a general rule, the status of the witness at the time of the trial governs the question of his competency, for, in contemplation of law the deposition itself is the witness, and the witness is presumed to testify when the deposition is used."

This statement of the rule is quoted approvingly in the last case cited above, and in the first case cited the court said:

"The judgment of conviction is but the evidence of the moral depravity which creates the disqualification; and the reason for the exclusion of the testimony of a party while under indictment upon which a conviction is subsequently had is just as strong as though his testimony was given after conviction. The facts existing at the time of the trial and not at the time of the taking of a deposition must be looked to ordinarily to determine its competency."

The confessions in question were clearly inadmissible to prove any fact or circumstance which tended to show that appellant "was directly or indirectly the instigator of the death of her husband," and the court was not authorized, in our opinion, to consider them, as it seems he did, as entering into and forming "a part of the appellant's life and history," to the end that it might thereby better and more correctly determine whether or not she was a proper and qualified person for the guardianship of her children's estates.

[4] Nor was either the copy of the affidavit of Louis Lowe filed in the justice court of Williamson county, charging that appellant killed her husband, or the copy of the judgment of that court declaring that the proof made upon the hearing of such charge was evident and sufficient to require the appellant to answer before the criminal court of Williamson county for the offense with which she was charged, competent evidence for the consideration of the trial court in determining any issue in this case. The affidavit was the ex parte statement of the affiant, Lowe, hearsay evidence when considered in reference to this case, and neither it nor the judgment established any fact or circumstance upon which a correct judgment herein could be predicated. It was error, therefore, to admit them in evidence, over the objection of appellant, for any purpose whatever.

[5] The substance of the next proposition urged by appellant is as follows:

"It was error for the court to require appellant to testify on cross-examination by the court that she was present during the trial of J. C. McLaren and Harry McBride for the murder of her husband, and sat still and did not rise up in court and deny the statements in their alleged confessions which were read in evidence to the jury, and did not go on the stand and testify denying the statements in said alleged confessions referring to her; and in offering and admitting same in evidence as in the nature of an admission by appellant."

This proposition, we think, should be sustained. As urged by appellant's counsel, the confessions referred to were read in a judicial proceeding during the trial of a case, to which appellant was not a party and over which appellant had no control or right to interfere, or to offer herself as a witness, and any effort by appellant to have denied or denounced the said proceeding would have been an unseemly and impertinent interruption of an orderly proceeding in court, then in progress, and might have subjected her to punishment for contempt of court; it appearing that said statements were addressed to the jury and the court and not to appellant, and it further appearing without dispute that appellant was prevented by the attorney for defendant in said cause from appearing as a witness, or from denying said statement. Such statements made under such circumstances were mere hearsay and no evidence against appellant of the truth of any statement contained in the alleged confession.

In Wilkins v. Stidger, 22 Cal. 232, 83 Am. Dec. 64, the court said:

"It is clear that a party to a suit is not bound by, or held to admit as true, every statement made by his witnesses during the trial of a cause, because he does not deny or contradict them at the time. A denial or contradiction under such circumstances would produce great confusion, and cause continued wrangling between the party and the witnesses. There is a certain regularity, order, and decorum required in such proceedings, which would preclude parties from interposing with denials and objections as they could in common conversations."

It is a familiar principle that a person's silence upon an occasion where he is at liberty to speak, and the circumstances naturally call upon him or her to do so, may be properly considered by the court or jury as tacit admission of the statements made in his presence. However, the circumstances must not only be such as afforded an opportunity to speak, but properly and naturally called for some action or reply from persons similarly situated. So that the neglect to reply to statements made in one's presence is not an admission of their truth unless they are addressed to the party, or made under such circumstances as to require a reply. The silence of the appellant at the trial of J. C. McLaren and Harry McBride could not, therefore, under the circumstances shown, be considered as an admission on her part of the truth of the statements made in their respective confessions of guilt or made use of for any purpose in the trial of this case.

[6] Appellant further contends that the judgment of the trial court refusing to appoint appellant guardian of the estates of her children was wholly unauthorized, and that judgment should be rendered in this court

awarding to her such guardianship. Our conclusion is that this contention is well taken and that such judgment should be here rendered. As has been stated, there was no contest of appellant's application for the guardianship of the estates of her children, and no legal or competent evidence was offered raising any issue as to the good character of appellant, or tending to show that she was not a proper person to be appointed guardian, or to show that any statutory ground of disqualification in fact existed. The appellant's conduct and tone of voice and such feeling as she may have manifested while undergoing the searching and rigid cross-examination of the court were of insufficient probative force to warrant the refusal of her application for guardianship. The testimony of witnesses introduced by appellant and who had been intimately associated with her is to the effect that she was a woman of good repute, of economical habits, and of good business qualifications. She is the surviving parent of the minors whose estates she seeks to manage as guardian, and each of said minors, being over 14 years of age, requested the court in writing to appoint her guardian of the estates. There was no competent testimony showing that appellant was disqualified by reason of matters mentioned in article 4078 of Vernon's Sayles' Civil Statutes, and as the surviving parent of the minors, and especially since they had selected her as such, she was entitled to be appointed guardian of their estates. In Heinemier v. Arlitt, 29 Tex. Civ. App. 140, 67 S. W. 1038, the court held that, when a person designated by the statute as having the prior right of guardianship is not disqualified by reason of matters mentioned in the statute, such person is entitled to be appointed guardian, although the court may be of the opinion that some other person would fill the position better. The court said:

"The Legislature has the power to make its laws mandatory upon the courts, as well as others; and, when it is reasonably certain that such was the purpose of the Legislature, it is the duty of the courts and others charged with the enforcement of statutory law to execute the legislative purpose, although in some instances hardships may result"—citing Blackwood v. Blackwood's Estate, 92 Tex. 482, 49 S. W. 1045.

It follows from what we have said that, in our opinion, the district court erred in not granting appellant's application. It is therefore ordered that the judgment of the district court be reversed, and that this cause be remanded to the district court, with instructions to enter judgment appointing appellant guardian of the estates of the minors, J. C. McLaren and Lucy McLaren, and that that court certify its action to the county court for observance.

Reversed and remanded.